IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHANDRA JAMES, *o/b/o* A.T.K.J,   *
                                  *
    Plaintiff,                    *    CIVIL ACTION NO. 14-00151-CG-B
                                  *
vs.                               *
                                  *
CAROLYN W. COLVIN,                *
Commissioner of Social Security,  *
                                  *
    Defendant.                    *

**REPORT AND RECOMMENDATION**

Plaintiff Shandra James (hereinafter "Plaintiff") brings this action on behalf of her minor child, A.T.K.J., seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for child supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* This action was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was waived. Upon consideration of the administrative record and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED.**

I.   <u>Procedural History</u>

Plaintiff protectively filed an application for supplemental security income benefits on behalf of her daughter

A.T.K.J. on March 30, 2012. (Tr. 128). Plaintiff alleged that A.T.K.J. has been disabled since October 29, 2011, due to asthma. (Id. at 128, 131). Plaintiff's application was denied at the initial stage on May 21, 2012. (Id. at 61). Plaintiff filed a timely Request for Hearing, and on August 13, 2013, Administrative Law Judge Ben E. Sheely (hereinafter "ALJ") held an administrative hearing, which was attended by Plaintiff, her daughter A.T.K.J., and Plaintiff's attorney. (Id. at 35, 39). Plaintiff provided testimony related to her claims. (Id.). On September 10, 2013, the ALJ issued an unfavorable decision finding that A.T.K.J. is not disabled. (Id. at 13). Plaintiff requested review of that decision by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on January 29, 2014. (Id. at 1).

Thus, the ALJ's decision dated September 10, 2013, became the final decision of the Commissioner. Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

> **Whether the ALJ erred by failing to acquire an updated medical opinion regarding whether the claimant medically equaled Listing 103.03B?**

2

III. **Factual Background**

A.T.K.J. was born on November 11, 2004, and was seven years old at the time that her mother protectively filed an application for supplemental security income benefits on March 30, 2012, alleging that A.T.K.J. is disabled as a result of asthma. (Tr. 128, 131). At the time of her administrative hearing on August 13, 2013, A.T.K.J. was eight years old. (Id. at 35, 39).

At the hearing, Plaintiff testified that her daughter has asthma, for which she takes Advair daily. Plaintiff testified that, when her daughter has a flare up of coughing or wheezing, she also takes steroids and uses her nebulizer. (Id. at 40-41). According to Plaintiff, A.T.K.J. generally uses her nebulizer five or six times a month. (Id. at 41). Plaintiff testified that when A.T.K.J. is out of steroids, she takes A.T.K.J. to the hospital to receive steroids and breathing treatments, which work. (Id.). Plaintiff explained that some of A.T.K.J.'s hospitalizations occurred before they had a nebulizer at home, but now that she has a nebulizer and Orapred (Prednisolone) at home, she does not have to take A.T.K.J. to the hospital because she can administer the steroids and nebulizer herself, and "it works." (Id. at 44, 46).

In her Function Report dated April 11, 2012, Plaintiff

3

stated that A.T.K.J.'s limitations are related to her ability to walk, run, throw a ball, and ride a bike. (Id. at 123). In her Disability Report dated April 11, 2012, Plaintiff stated that A.T.K.J. "has asthma attacks all the time and lately she's been going to the hospital for it because it gets so bad. She has trouble running[;] she gets tired real quick and her chest gets to hurting. She gets headaches and says loud noises hurt her head and she also said her chest hurts." (Id. at 131).

A.T.K.J.'s medications include Advair and sometimes steroids (Prednisolone acetate) and Albuterol breathing treatments. (Id. at 40-41, 132). Plaintiff reported no side effects from her medications. (Id. at 132).

## IV.  **Analysis**

### A.    **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v.

4

Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B.   Childhood Disability Law**

The Personal Responsibility and Work Opportunity Act of 1996, which amended the statutory standard for children seeking supplemental security income benefits based on disability, became effective on August 22, 1996. See Pub. L. No. 104-193, 110 Stat. 2105 § 211(b)(2) (1996) (codified at 42 U.S.C. § 1382c). The definition of "disabled" for children is:

> An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

See 42 U.S.C. § 1382c(a)(3)(C)(i), 20 C.F.R. § 416.906. The

5

regulations provide a three-step sequential evaluation process for determining childhood disability claims. 20 C.F.R. § 416.924(a).

At step one, a child's age and work activity, if any, are identified to determine if he has engaged in substantial gainful activity. At step two, the child's physical/mental impairments are examined to see if he has an impairment or combination of impairments that is severe. Under the regulations, a severe impairment is one that is more than "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c). To the extent the child is determined to have a severe impairment, at step three, the Commissioner must then determine whether the impairment or combination of impairments meets or is medically or functionally equal to an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P, and otherwise satisfies the duration requirement. 20 CFR § 416.924.

A child's impairment(s) meets the listings' limitations if he or she actually suffers from limitations specified in the listings for the severe impairment. Shinn v. Commissioner of Soc. Sec., 391 F.3d 1276, 1279 (11th Cir. 2004). A child's impairment(s) medically equals the listings if his or her limitations are at least of equal severity and duration to the listed impairment(s). Id. (citing 20 CFR § 416.926). Where a

6

child's impairment or combination of impairments does not meet or medically equal any listing, then the Commissioner must determine whether the impairment or combination of impairments results in limitations that functionally equal the listings. 20 CFR § 416.926a.  To establish functional equivalence in step three, the claimant must have a medically determinable impairment or combination of impairments that results in marked limitations in two functional domains or an extreme limitation in one domain.  20 CFR § 416.926a(a).  The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 CFR 416.926a.

## C.  **Discussion**

In the case *sub judice*, the ALJ determined that the claimant, a school-age child, has not engaged in substantial gainful activity since March 30, 2012, the application date, and that she has the severe impairments of asthma and dermatitis. (Tr. 16).  The ALJ further found that the claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1, nor does she have an impairment or combination of impairments that functionally

equals the listings.[1]  (Id. at 18-19).

In determining that A.T.K.J.'s asthma and dermatitis were severe, the ALJ made the following relevant findings:

> The claimant presented to the emergency department at USA Children's and Women's Hospital on October 29, 2011, for complaints of wheezing and shortness of breath time's 2-days. The claimant began having a runny nose, sneezing, and coughing up cold. The claimant's chest pain and shortness of breath improved after administering Albuterol and steroids in the emergency department. The claimant was admitted for treatment. X-rays of the chest in the E/R showed findings suggestive of right middle lobe collapse. Upon discharge on November 02, 2011, the examiner noted that the claimant was in no acute distress with minimal expiratory wheezing and no retractions on exam. The examiner diagnosed asthma exacerbation resolving, costochondritis, resolved, and pneumonia resolving. The examiner prescribed Orapred 50 mg, Ventolin HFA 90 mcg, and Flovent 110 mcg per inhalation. The examiner advised the claimant to follow-up with Franklin Primary Health Center in 3-4 days (Exhibit 1F).
>
> The claimant established treatment at Franklin Primary Health Center from May 06, 2008 through February 08, 2012, for diagnoses of allergic rhinitis, upper respiratory infection, wheezing (1st episode on August 23, 2010)/asthma exacerbation and eczema/contact dermatitis. The examiner

---

[1]  In this case, Plaintiff does not claim that A.T.K.J.'s impairments functionally equal the Listing. Plaintiff claims only that A.T.K.J.'s impairments "medically equal" Listing 103.03B. (Doc. 15 at 1; Tr. 37). Therefore, the ALJ's discussion of the functional equivalence domains has not been addressed here.

8

diagnosed other general medical conditions. On August 27, 2010, follow-up visit, the claimant's *wheezing resolved* and atopic dermatitis was mild.  The claimant was seen for follow-up hospital stay on November 29, 2011, for asthma.  Mom reported being concern[ed] about the claimant's chest pains with walking to and from school.  She stated that she only administers to the claimant Albuterol for asthma control, but not her other medications due to inability to get the medicines because of Medicaid expiration.  On the claimant's January 25, 2012, office visit, the examiner noted that the claimant was being seen for headaches and tinea capitis, but her *asthma was well controlled*.   The claimant was seen on February 08, 2012, for well child visit. The mother reported no issues and stated *that the claimant was doing well* (Exhibit 2F).

The claimant was admitted into USA Children's and Women's Hospital from the emergency department on March 28, 2012.  Ms. Shandra K. James, the claimant's mother reported that the claimant has history of asthma.  Upon admission, the examiner diagnosed acute asthma exacerbation and respiratory distress.  The examiner treated the claimant with Albuterol every 3-hours and IV steroids therapy.  The examiner noted that the claimant responded well to the administered medications.  *Upon discharge on March 31, 2012, the examiner diagnosed acute asthma exacerbation, resolved and respiratory distress, resolved*.    The examiner prescribed Albuterol HFA and Advair inhaler (Exhibit 3F).

The claimant was seen at USA Children's and Women's Hospital emergency department on August 10, 2012, for wheezing, coughs, cold/congestion and fever time's 2-days. Ms. James reported history of asthma.  Ms. James also reported that the claimant has chest pain.  *The claimant improved with*

9

*treatment.* The examiner diagnosed asthma exacerbation. The examiner prescribed Orapred and Albuterol Nebulizer. The claimant was presented to the emergency room on September 14, 2012, for difficulty breathing and coughing. Ms. James reported that the claimant's Albuterol did not provide any relief in symptoms. She reported that the claimant uses Albuterol daily and she coughs throughout the night also using Albuterol. The E/R assessment was positive for coarse breath sounds, mild tachypnea and mild wheezing bilaterally. She was treated with Prednisone 60 mg, Albuterol/Atrovent 10 mg/1mg and Aerosol Albuterol 7 grams. *She also received treatment with Albuterol 2.5 mg given via mask on September 15, 2012, with improvement in breathing and decreased coughing.* At discharge on September 15, 2012, the examiner diagnosed asthma exacerbation and prescribed Albuterol every 4-hours with Acapella, Prednisone 2 mg or 16 mg daily and start and increase Advair to 115/21 (Exhibit 5F).

The claimant was seen at Franklin Primary Health Center on September 04, 2012, for a complaint of asthma symptoms. *The examiner noted that the severity of the problem was mild.* Ms. James stated that the symptoms occur with upper respiratory infections and with the weather changes. According to Ms. James, the claimant's symptoms were associated with concurrent *upper respiratory symptoms and recent exposure to smoke.* She stated that the claimant's symptoms were relieved by Albuterol and cough syrup. Additionally, Ms. James reported that the claimant was experiencing eczema flare-up. She stated that she was using Dial soap and regular lotion because she ran out of eczema cream. The claimant appeared in no acute distress, well nourished and well developed. *Upon exam, her lungs were clear to auscultation, no cough and respiratory effort was normal.* The examiner diagnosed

10

asthma, chronic; atopic dermatitis and related conditions, chronic; and acute allergic rhinitis, cause unspecified. The claimant was seen on September 26, 2012, for hospital follow-up for asthma exacerbation. *Ms. James reported being compliant with medication Advair. She stated that the claimant was doing better. The examiner observed the claimant with no wheezing or coughing. Upon exam, her lungs were clear to auscultation, no cough and respiratory effort was normal.* The examiner diagnosed *asthma, unspecified type, with acute exacerbation, resolved*; and epistaxis, chronic. The *examiner noted that the claimant/mother needed to adhere to asthma regimen.*

On October 10, 2012, the claimant was seen for EPSDT/well child visit. *Ms. James reported that the claimant's known asthmatic (sic) was doing good. She denied coughing or wheezing.* Mom claimed compliance to medications. The physical exam was normal. The examiner diagnosed routine child health exam. The claimant was seen on December 13, 2012, for medication refills on asthma and eczema medicines. *Ms. James noted that the claimant was doing well with asthma and she denied any recent E/R visits.* She complained of eczema breakouts. The physical exam was essentially normal except for hyperpigmented eczematous areas to the upper left arm. The examiner diagnosed allergic rhinitis, cause unspecified, chronic; asthma, chronic; and other atopic dermatitis and related conditions (Exhibit 6F).

The claimant was brought into the emergency department at USA Children's and Women's Hospital on February 02, 2013, for complaints of 4-day history of cough that has worsened 2-nights prior to admission. Upon admission, the examiner diagnosed asthma exacerbation. The examiner treated the Claimant with Albuterol 5 mg every 3-

11

hours, Acapella for chest physical therapy and IV Solu-Medrol 60 mg.  The chest x-rays revealed persistent right middle lobe atelectasis and/or pneumonia.  *Upon discharge on February 10, 2013, the claimant's respiratory status was significantly improved with no retractions on exam, not any nasal flaring, intermittent wheezing on expiration, and minimal crackles.*  The claimant was discharged home in stable condition.  She completed a 7-day course of steroids.  *The examiner diagnosed asthma exacerbation, resolving; right-middle lobe pneumonia, resolving; costal chondritis, resolving* and hypoxia, resolved (Exhibit 7F).

The claimant was seen at Franklin Primary Health Center on June 25, 2013, for complaints of rash under left arm and left hip pain with mild severity.  The claimant denied any injury to the left hip.  The claimant reported that the pain was completely resolved now.  *Ms. James stated that the claimant has known asthma, but no recent E/R visits and no nighttime coughing.*  The physical exam was normal.  The examiner diagnosed rash and other nonspecific skin eruption, symptomatic; asthma, unspecified type, chronic; and pain in joint involving other specified sites, left hip resolved (Exhibit 8F).

The claimant presented to the emergency department at USA Children's and Women's Hospital on December 26, 2011, for wheezing.  Ms. James stated that she administered to the claimant one treatment the night before the E/R visit and two inhaler treatments the day of E/R visit without improvement.  The examiner treated the claimant with Solumedrol 60 mg and Albuterol Nebulizer with improvement.  Upon discharge, the examiner diagnosed asthma exacerbation and upper respiratory infection (Exhibit 9F).

The undersigned Administrative Law Judge

finds that the claimant's impairments can be
expected to cause more than minimal
limitations in her ability to perform basic
age-appropriate activities. Therefore, she
possesses severe medically determinable
impairments.

(Id. at 16-18) (emphasis in original).

In addition, in determining that A.T.K.J. did not have an

impairment or combination of impairments that met or medically

equaled the listings, the ALJ made the following relevant

findings:

All listings were analyzed. No listing was
met or equaled, whether the impairment was
analyzed individually or in combination. No
examining or treating source has reported
that the claimant has an impairment that
meets or medically equals the criteria of a
listed impairment.

The undersigned Administrative Law Judge has
considered the claimant's impairment of
asthma as noted at Section #3 as indicated
in Appendix 1, Subpart P, Regulations No. 4
under the Listings 103.03 [Asthma]. The
Administrative Law Judge finds that the
claimant's impairments considered
individually and in combination, do not
cause any additional and significant
limitations of function or restrictions to
function physically or mentally in her daily
activities of living. The claimant's asthma
does not correspond with all of the
requirements under listing 103.03. After
considering the objective evidence, and the
applicable listing, the undersigned
concluded that there is not sufficient
evidence to establish that the claimant
meets or medically equals a listing.

The claimant's dermatitis does not meet the
requirements of listing 108.05 because there

> are no extensive skin lesions that persisted for at least three months despite continuing treatment.

(Id. at 18-19).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

**1.   Issue**

**Whether the ALJ erred by failing to acquire an updated medical opinion regarding whether the claimant medically equaled Listing 103.03B?**

In her brief, Plaintiff argues that the ALJ erred in finding that A.T.K.J.'s asthma did not medically equal the criteria of Listing 103.03B and in failing to obtain an updated medical opinion regarding medical equivalency. According to Plaintiff, although the State Agency medical consultant offered his opinion on May 21, 2012, that A.T.K.J.'s impairments do not medically equal Listing 103.03, the consultant did not have all of A.T.K.J.'s medical records before him at that time, including records of subsequent emergency room visits and hospital admissions.[2]  (Doc. 15 at 7-9; Tr. 51).  Thus, Plaintiff argues,

---

[2]  The record shows that State Agency physician, Dr. Howard C. Harper, M.D., evaluated A.T.K.J.'s medical records on May 21, 2012, and opined that although A.T.K.J. has the severe impairment of asthma, she is not disabled because she does not meet, medically equal, or functionally equal a listing.  (Tr. 54).  Dr. Harper found that A.T.K.J. has no limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, or caring for oneself, and that she has less than marked

the ALJ should have ordered a second medical opinion to consider the remaining medical evidence and to determine, based on all of the treatment records, whether A.T.K.J.'s asthma medically equaled Listing 103.03B.

The Commissioner counters that substantial evidence supports the ALJ's decision in this case that A.T.K.J.'s asthma does not medically equal the criteria of Listing 103.03B and, further, that the ALJ did not err in failing to obtain a second medical opinion because Listing 103.03B requires documentation of the intensity of the claimant's asthma episodes, such as the results of spirometric and arterial blood gas studies, which Plaintiff admits is not contained in any of the medical records. (Doc. 16 at 1).   In addition, the Commissioner argues that the record contains evidence of A.T.K.J.'s non-compliance with prescribed medical treatment, which further supports the ALJ's finding that her asthma lacked the requisite severity to medically equal the criteria of Listing 103.03B.   (Id. at 8). Having carefully reviewed the record, the undersigned finds that Plaintiff's claim is without merit.

Listing 103.03 covers childhood asthma and requires asthma attacks of a specified severity and frequency. Listing 103.03B requires the following:

---

limitations in the domains of moving about and manipulation of objects and health and physical well being. (Id. at 51-54).

> B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. pt. 404, subpt. P, app. 1, § 103.03B.

In addition, Listing 3.00C, explaining attacks, provides as follows:

> When a respiratory impairment is episodic in nature, as can occur with exacerbations of asthma, cystic fibrosis, bronchiectasis, or chronic asthmatic bronchitis, the frequency and intensity of episodes that occur despite prescribed treatment are often the major criteria for determining the level of impairment. Documentation for these exacerbations should include available hospital, emergency facility and/or physician records indicating the dates of treatment; clinical and laboratory findings on presentation, such as the results of spirometry and arterial blood gas studies (ABGS); the treatment administered; the time period required for treatment; and the clinical response. Attacks of asthma, episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum), or respiratory failure as referred to in paragraph B of 3.03, 3.04, and 3.07, are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours.

16

> The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. **For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.**

20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00C (emphasis added).

Without question, Plaintiff is the one who bears the burden of providing medical records showing that A.T.K.J. meets a Listing. Goree v. Colvin, 2013 U.S. Dist. LEXIS 113131, *4, 2013 WL 4056218, *2 (N.D. Ala. Aug. 12, 2013) (citing Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002)). In her brief, Plaintiff cites to a number of visits to the hospital emergency room, some resulting in admission to the hospital. However, Plaintiff has failed to demonstrate that these visits satisfy the specified *severity* and *frequency* of asthma "attacks" to satisfy the criteria of Listing 103.03B.

Of the six visits cited by Plaintiff (October 29, 2011, December 26, 2011, March 28, 2012, August 10, 2012, September 14, 2012, and February 2, 2013), only three (October 29, 2011, March 28, 2012, and February 2, 2013) appear to meet the Listing definition of an asthma attack, meaning that, on those occasions, A.T.K.J. received intensive treatment such as IV bronchodilator, antibiotic administration, or prolonged inhalational bronchodilator therapy. (Doc. 15 at 2-3; Tr. 153,

192, 227).   On the remaining three occasions, it appears that A.T.K.J. was treated with steroids and breathing treatments and then released in a matter of hours because her symptoms had resolved.   (Tr. 203, 206, 239).   Although A.T.K.J.'s hospitalizations on October 29, 2011, March 28, 2012, and February 2, 2013 do meet the definition of "attack" with respect to the type of treatment rendered, and each of those visits qualifies as two attacks (for a total of six) because they were inpatient hospitalizations for longer than twenty-four hours for control of asthma, A.T.K.J. lacks the requisite number of attacks *during a twelve-month period.*[3]   Thus, because Plaintiff has not shown that A.T.K.J. had the requisite number of asthma attacks, as that term is defined by Listing 3.00C, during any twelve-month period to satisfy the requirements of Listing 103.03, her claim fails.

In addition, as noted by Defendant,[4] the record lacks any ABGS studies or spirometric test results that document the

---

[3] In other words, the twelve-month period would run from October 29, 2011, the first qualifying hospitalization, to October 2012. Thus, the February 2, 2013 hospitalization fell outside of the requisite twelve-month window.

[4] Additionally, Defendant is correct that A.T.K.J.'s treatment records show more than one instance of non-compliance with prescribed medical treatment.   (Tr. 148, 228, 234).   This further supports the ALJ's finding that A.T.K.J.'s asthma was not as severe as that alleged by Plaintiff and did not meet the criteria of Listing 103.03.

extreme impairment asserted by Plaintiff.  Indeed, in her brief, Plaintiff states that "[t]he ALJ never discloses how [A.T.K.J.] did not meet Listing 103.03 but a reading of the listing could lead one to assume it is because [of] the lack of spirometric results obtained between attacks that document the presence of baseline airflow obstruction. . . . It seems that the *other* requirements of Listing 103.03 are met."  (Doc. 15 at 8) (emphasis added).  Plaintiff's acknowledgement that she failed to provide the type of medical evidence required under Listing 103.03 further supports the ALJ's finding that she failed to meet the intensity requirement of Listing 103.03B.  See Taylor ex rel. K.T. v. Astrue, 2012 U.S. Dist. LEXIS 104201, *16, 2012 WL 3052916, *6 (S.D. Ala. July 26, 2012) (where plaintiff had a "record of repeated medical assistance" but treatment generally did not necessitate "intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy," and where "ABGS studies and spirometric test results were not present in the record to document the extreme impairment [of asthma] asserted by plaintiff[,]" the evidence did not support the intensity of intervention required in Listing 103.03B.).

Having reviewed the evidence in this case at length, the Court rejects Plaintiff's assertion that the ALJ should have ordered an additional medical opinion to determine whether

A.T.K.J. medically equaled Listing 103.03B.  A medical expert is required by SSR 96-6p only when, in the opinion of the ALJ, the additional medical evidence might change the State Agency doctor's opinion.[5]  Goree, 2013 U.S. Dist. LEXIS 113131 at *5, 2013 WL 4056218 at *2.  Having found that none of the treatment records suggest that A.T.K.J. met or equaled Listing 103.03, including the additional records obtained by Plaintiff after May 21, 2012, when State Agency consulting physician, Dr. Harper, gave his opinion that A.T.K.J. is not disabled, there was no need for the ALJ to employ an additional medical expert to evaluate those records.  Cf. Goree, 2013 U.S. Dist. LEXIS 113131 at *6, 2013 WL 4056218 at *2 (where "the additional records do not suggest the claimant met or equaled Listing 103.03," "there was no need for the ALJ to employ a medical expert to evaluate those records.").  Indeed, here, as in Goree, the ALJ's decision was supported by substantial evidence, even without

---

[5] SSR 96-6p, 1996 SSR LEXIS 3, provides in pertinent part:

> [A]n administrative law judge . . . must obtain an updated medical opinion from a medical expert in the following circumstances: . . . When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

consideration of any additional medical opinions. *Id.* Therefore, Plaintiff's claim is without merit.

## V.   Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **RECOMMENDED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for child supplemental security income be **AFFIRMED**.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's factual findings." *Dupree v. Warden, Attorney General, State of Alabama*, 715 F.3d 1295, 1300 (11th Cir. 2011). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is

21

found.   An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **8th** day of **September, 2015.**

_____
    **/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
